UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| NOBLE ROMAN'S, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CAUSE NO. 1:14-cv-1734-WTL-DML |
| | ) |
| HATTENHAUER DISTRIBUTING | ) |
| COMPANY, | ) |
| | ) |
| Defendant. | ) |

### ENTRY ON PARTIAL MOTION TO DISMISS

This cause is before the Court on the Defendant's partial Motion to Dismiss (Dkt. No. 20). The motion is fully briefed and the Court, being duly advised, **DENIES** the motion for the following reasons.[1]

### I. APPLICABLE STANDARD

The Defendant moves to dismiss Count II of the Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that it fails to state a claim for which relief can be granted. In reviewing a Rule 12(b)(6) motion, the Court "must accept all well pled facts as true and draw all permissible inferences in favor of the plaintiff." *Agnew v. National Collegiate Athletic Ass'n*, 683 F.3d 328, 334 (7th Cir. 2012). For a claim to survive a motion to dismiss for failure to state a claim, it must provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)) (omission in original). A complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

---

[1] Because the Court does not believe oral argument would be helpful in this cause, the Defendant's Motion Requesting Oral Argument (Dkt. No. 35) is also **DENIED**.

*Agnew*, 683 F.3d at 334 (citations omitted). A complaint's factual allegations are plausible if they "raise the right to relief above the speculative level." *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 556 (2007).

## II.     BACKGROUND

The facts set forth in the Plaintiff's Complaint (Dkt. No. 1) are as follow.

The Plaintiff, Noble Roman's, Inc. ("Noble Roman's") is in the business of franchising pizza outlets and Tuscano's Italian-style submarine sandwiches to franchisees across the United States. Defendant Hattenhauer Distributing Company ("Hattenhauer") owns and operates convenience stores and gas stations in Goldendale, Washington and Wasco, Oregon.

In August 2006, Noble Roman's and Hattenhauer entered into two franchise agreements for the sale of Noble Roman's pizza and Tuscano's sandwiches at Hattenhauer's convenience store in Goldendale, Washington. In April 2005, Noble Roman's and Hattenhauer entered into a franchise agreement for the sale of Noble Roman's pizza at Hattenhauer's convenience store in Wasco, Oregon; this agreement was renewed in March 2011. Under the franchise agreements, Hattenhauer agreed to pay a seven percent weekly royalty fee to Noble Roman's and agreed to only use ingredients that conform to Noble Roman's standards and specifications, among other things.

At some point in 2014, Noble Roman's performed an audit of Hattenhauer's franchises and found that it under-reported sales at both the Washington and Oregon locations from January 2011 through February 2014. Noble Roman's notified Hattenhauer of this in April 2014; Hattenhauer disputed the audits and refused to pay the royalty fees. Expanded audits conducted by Noble Roman's—from the time the locations opened through August 2014—revealed the same.

In addition to the unpaid royalty fees, Noble Roman's also alleges that since January 2011, Hattenhauer has been using an inferior-quality cheese on its pizzas, not the Noble Roman's proprietary pizza cheese.

In October 2014, Noble Roman's filed suit in this Court alleging unfair competition (Count I) and breach of contract (Count II).

### III. DISCUSSION

Hattenhauer moves to dismiss Count II, the breach of contract claim. Its arguments are addressed below.

Count II of Noble Roman's Complaint alleges that "Hattenhauer has knowingly breached and continues to breach the Franchise Agreements by (1) under-reporting Gross Sales; [and] (2) refusing to pay the royalty fees that are directly related to the under-reported Gross Sales[.]" Amend. Compl. ¶ 35.[2] As explained above, Noble Roman's bases these allegations on the audits it conducted in 2014. The audits were entitled "Sales & Purchase Comparison," and compared Hattenhauer's "reported sales to [its] potential sales based on its purchases." Dkt. No. 25. The audits multiplied the number of items Hattenhauer purchased—breadsticks, dough, wings, submarine rolls, etc.—by the menu price in order to obtain an "Estimated Sales" figure. *Id*. This "Estimated Sales" figure was then reduced by a certain percentage, depending on the food item, to account for "Waste." *Id*. In order to determine if Hattenhauer was over- or under-reporting its sales, Noble Roman's subtracted Hattenhauer's "Reported Sales" figure from the "Total Estimated Sales" figure; this resulted in the amount of "Under-Reported Sales." *Id*. Noble Roman's alleges it is entitled to seven percent—the royalty fee—of this "Under-Reported Sales"

---

[2] Count II also contains allegations related to Hattenhauer's alleged use of inferior-quality pizza cheese. *See* Amend. Compl. ¶ 35(3) and (4). Hattenhauer does not move to dismiss these allegations.

amount. *See* Amend. Compl. ¶ 24 ("Hattenhauer has under-paid royalties of $41,561.98 at the Washington Location and $21,628.53 at the Oregon Location, resulting in total underpaid royalty fees upon which an additional amount of interest is owed.").

Hattenhauer argues that "[t]he plain language of the Franchise Agreements as pleaded by Plaintiff, however, establishes that those audits did not conform to the terms of the Franchise Agreements and therefore cannot form the basis of a breach of contract action." Def.'s Br. at 5. It bases this on two provisions contained in the franchise agreements. First, Hattenhauer was required, on a weekly basis, to pay Noble Roman's a seven percent royalty fee on the franchises' "Gross Sales." Amend. Compl. ¶ 15. Second, the franchise agreements define "Gross Sales" as "the total selling price of all products and services and all income of every other kind and nature related to [the Noble Roman's or Tuscano's franchises] [.]" *Id*. ¶ 16. Based on these two provisions, Hattenhauer argues as follows:

> by the very terms of the Franchise Agreements, Hattenhauer was only required to report and pay royalties on "the total selling price of all products"—i.e. the actual amount of products that it sold. Plaintiff's Complaint is devoid of any allegations that Hattenhauer has failed to pay royalties based on "the total selling price of all products." Therefore, its claims for breach of contract based on underreported sales and unpaid royalties must be dismissed because the allegations do not establish that there was any breach.

Def.'s Br. at 6. This ignores the thrust of the Noble Roman's breach of contract claim. As noted above, Noble Roman's alleges that Hattenhauer *under-reported* its gross sales. Taking Noble Roman's allegations as true, Hattenhauer would owe additional royalty fees because its gross sales were, in fact, higher than what it originally reported. Of course, discovery may show otherwise or Hattenhauer may have legitimate reasons as to why its figures were lower than Noble Roman's estimates; however, at this phase in the litigation, Noble Roman's has stated a plausible breach of contract claim.

4

Hattenhauer's second argument is that "any claims based on alleged underreported sales prior to October 23, 2010 are barred by the statute of limitations." Def.'s Br. at 7. Hattenhauer correctly argues that

> [t]he statute of limitations for a breach of contract action in Indiana depends on the nature of the contract. An action based on a contract for the sale of goods has a four-year limitations period under the UCC, Ind. Code Ann. § 26-1-2-725, compared to six years for an action based on promissory notes or other written contracts for the payment of money, Ind. Code Ann. § 34-11-2, and ten years for all other written contracts, Ind. Code Ann. § 34-11-2-9.

Def.'s Br. at 8.[3] Hattenhauer argues that the franchise agreements—the contracts at issue in this cause—"are predominantly for the sale of goods and thus governed by the UCC four-year statute of limitations." *Id*. at 9. Noble Roman's disagrees, arguing that the franchise agreements are "contracts in writing other than those for the payment of money, and the contract claim is subject to a 10-year statute of limitations." Pl.'s Resp. at 4.

Indiana applies what is known as the "predominate thrust" test to determine if a contract is for the sale of goods. "Under the predominate thrust test, courts look to the agreement between the parties to determine their understanding about the predominant purpose of the contract. In focusing on the goals of the contracting parties, the predominant thrust approach preserves parties' expectations regarding their agreement." *InsulMark Midwest, Inc. v. Modern Materials, Inc.*, 612 N.E.2d 550, 554 (Ind. 1993). Hattenhauer argues that "the performance of the parties and the relationship of the parties as contemplated by the Agreements is to sell Hattenhauer pizza and sandwich ingredients, and then sell the resulting pizzas and sandwiches to consumers." Dkt. No. 21 at 9. It further argues that "the primary reason Noble Roman's entered

---

[3] Hattenhauer notes that "[t]he statute of limitations for Plaintiff's breach of contract claims is governed by Indiana law as specified in the Franchise Agreements and because this case resides in an Indiana forum." Def.'s Br. at 7. Noble Roman's does not argue otherwise.

5

into the Franchise Agreements was to accomplish the sales of its goods—the pizzas and sandwiches—at Hattenhauer's convenience stores in Washington and Oregon." *Id*. Finally, it notes that the "Royalty Fee is derived directly from gross sales of goods." *Id*. at 10.

Notwithstanding Hattenhauer's arguments to the contrary, it appears clear to the Court that the predominate thrust of the franchise agreements was the granting of the Noble Roman's and Tuscano's franchises. Specifically, the purpose was to allow and enable Hattenhauer to set up and operate a Noble Roman's and/or Tuscano's franchise and to use its marks and products. Of course, the franchise agreements contemplated that Hattenhauer would sell Noble Roman's pizza and Tuscano's Italian-style submarine sandwiches, but the agreements primarily involve the granting, development, and operation of the two franchises. The Court agrees with Noble Roman's that "[t]he Franchise Agreements . . . address the sale of goods only indirectly and focus heavily on the 'service aspect' of the parties' relationship." Pl.'s Resp. at 5. Accordingly, the UCC's four-year statute of limitations is inapplicable to the contracts at issue.[4]

## IV. CONCLUSION

For the foregoing reasons, Hattenhauer's Motion to Dismiss (Dkt. No. 20) is **DENIED**.

SO ORDERED: 4/3/15

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

---

[4] In a footnote, Hattenhauer also argues that the franchise agreements only require it to keep records of sales for the past five years. Hattenhauer seems to suggest, therefore, that it may not have records more than five years old of its actual "Gross Sales" for which to determine if it, indeed, did under-report its sales to Noble Roman's. It thus argues that "in the absence of such records [Noble Roman's cannot] resort to mere estimations of the amount of sales Plaintiff believes Hattenhauer should have had in attempting to enforce the Agreements." Def.'s Br. at 11, n. 4. Whether or not Hattenhauer does, in fact, possess these records will be an issue for discovery. Moreover, this argument can be better developed in later motions. At this point, however, the Court finds that Noble Roman's has stated a plausible breach of contract claim, and declines to limit that claim to a five-year timeframe.

6

Copies to all counsel of record via electronic notification