UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| NOBLE ROMAN'S, INC.,<br><br>Plaintiff,<br>vs.<br><br>HATTENHAUER DISTRIBUTING COMPANY,<br><br>Defendant. | Case No. 1:14-cv-1734-WTL-DML |

**REPLY IN SUPPORT OF NOBLE ROMAN'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

Noble Roman's, Inc. ("Noble Roman's"), by counsel, pursuant to S.D. Ind. L.R. 7-1 and 56-1, respectfully submits this Reply in Support of Noble Roman's Motion for Partial Summary Judgment, and states:

## INTRODUCTION

Noble Roman's and Hattenhauer Distributing Company ("Hattenhauer") have filed cross-motions for summary judgment. On July 28, 2016, Hattenhauer filed a Response in Opposition to Noble Roman's Motion ("Response") (Dkt. 178). This Reply addresses some of the false statements or omitted facts from Hattenhauer's Response. Noble Roman's hereby incorporates the Statement of Facts and Arguments from its Response in Opposition to Defendants' Motion for Summary Judgment (Dkt. 177) as if fully stated herein, as many of the erroneous statements levied by Hattenhauer in its Response mirror those raised in its dispositive motion.

The straightforward issues in this litigation remain that Hattenhauer's Oregon Location failed to use Noble Roman's pizza cheese for an extended period of time, and instead used Golden California brand cheese to make and sell pizzas that it marked and held out to the public as Noble Roman's pizza. As a matter of law, these acts violated the Lanham Act and breached

the Franchise Agreement. Second, Noble Roman's audits of Hattenhauer's purchases to determine the amount of sales revealed significant underreporting. Hattenhauer's two franchise locations should have reported greater sales, per the Franchise Agreements, had they been operating their franchises in accordance with Noble Roman's specified standards. Hattenhauer's attempt to deflect the blame for its decision to order and use unauthorized cheese to make its pizzas and attempt to suggest a different method for Noble Roman's audit of Hattenhauer's sales does not relieve Hattenhauer of its liability for these counts as a matter of law. Therefore, summary judgment in favor of Noble Roman's is appropriate.

## ARGUMENT

### I. Paul Mobley's Declaration is based on personal knowledge and should not be discounted.

In its Response, Hattenhauer argues that certain portions of Paul Mobley's Declaration, submitted in support of Noble Roman's Motion for Partial Summary Judgment, should be stricken or ignored. Specifically, Hattenhauer contends that Mr. Mobley Declaration: (i) offers undisclosed and unqualified expert opinions; and (ii) is based on information outside his personal knowledge. Hattenhauer has not moved to strike Mr. Mobley's Declaration. Nonetheless, the Court should ignore these arguments as they are baseless.

Hattenhauer's argument that Mr. Mobley's Declaration offers undisclosed and unqualified expert opinions is a non-starter. Mr. Mobley stated in his Declaration that he is the Executive Chairman and Chief Financial Officer of Noble Roman's, Inc. *See* Dkt. 159-1, ¶1. He has been running Noble Roman's, Inc. since 1972 and has been involved in the pizza business continuously ever since. *Id.* ¶2; *see also* Reply Exhibit 1. No other person has more knowledge and information about Noble Roman's trademarks, operations, expansions, growth, locations or preparation and sale of Noble Roman's Pizza within convenience stores than Mr. Mobley. *Id.* at

¶¶3-8. Mr. Mobley has personal knowledge concerning the general practice of preparation, baking, displaying and selling Noble Roman's Pizza in convenience stores. *Id.* at ¶8. He also has personal knowledge about the potential errors that can occur when Noble Roman's Pizzas are taken to the sales counter to be rung up. *Id.* at ¶9.

Specifically with regard to Hattenhauer's franchises, Mr. Mobley has personal knowledge concerning the Franchise Agreements as he provided a signature on the agreements on behalf of Noble Roman's. *Id.* at ¶¶10-12. He further has personal knowledge concerning Noble Roman's Food Preparation and Product Specifications Manual as he has read and reviewed this manual. *Id.* at ¶13; *see also* Reply Exhibit 1. Mr. Mobley also has personal knowledge concerning the audit of Hattenhauer's locations as he instructed the audit to be conducted, reviewed the audit materials and then directed all action as a result of the audits. *Id.* at ¶¶14-18. When Hattenhauer made a complaint with the State of Washington Department of Financial Institutions, Mr. Mobley was involved with Noble Roman's response to that complaint, and, thus, has personal knowledge about that complaint and Noble Roman's response. *Id.* at ¶¶19-21; *see also* Reply Exhibit 2. Last, as a Certified Public Accountant and experienced auditor, Mr. Mobley has personal knowledge about the generally accepted ways of auditing for accurate reporting of sales. *Id.* at ¶¶22-23; *see also* Reply Exhibit 1.

Mr. Mobley was deposed for two (2) entire days concerning all of the subjects contained within his Declaration, among many other subjects. To claim that any of Mr. Mobley's factual statements were "undisclosed" or complain that Hattenhauer has not had an opportunity to question Mr. Mobley about the subjects raised in his Declaration are empty and completely baseless. In footnote 8 of its Response, Hattenhauer requests an opportunity to depose Mr. Mobley for a third day "as an expert witness." Should Hattenhauer formally move for this

request, Noble Roman's will vehemently oppose as any question that Hattenhauer could possibly ask in this regard has been asked and answered multiple times. It was only with the assistance and instruction of this Court that Hattenhauer's initial discovery quest in this case was ended.[1] Therefore, Hattenhauer's request to strike or ignore paragraphs 8, 9, 22 and 23 of Mr. Mobley's Declaration should be ignored.

## II. Hattenhauer Violated the Lanham Act by Selling Pizzas under Noble Roman's Trademarks with Non-Conforming Cheese.

In Response to Noble Roman's Motion for Partial Summary Judgment, Hattenhauer attempts to blame Noble Roman's for Hattenhauer's wrong doings. Specifically, Hattenhauer argues that: (i) Noble Roman's received distributor reports from the distributor that Hattenhauer used to make its ingredient purchases, but did not discover Hattenhauer's decision to buy Noble Roman's proprietary cheese for one of its two franchise locations while continuously purchasing the correct cheese from the same distributor for the other location; and (ii) Noble Roman's consented to Hattenhauer's use of a substitution cheese. Both of these theories lack factual support or evidence.

The Lanham Act prohibits a franchisee from selling a substituted or adulterated good under the franchisor's trademark. Hattenhauer, operated a Noble Roman's franchise in Oregon and another in Washington, wherein it sold pizzas using an unapproved pizza cheese instead of Noble Roman's proprietary pizza cheese in the Oregon Location for a number of years. This violated the Lanham Act because it deceived customers into paying full price for a product Hattenhauer represented was a Noble Roman's pizza, but in fact was not.

---

[1] On August 17, 2016, Hattenhauer continued in its attempt to continue its discovery games by filing a "Motion to Reopen Discovery and to Compel Production." Noble Roman's will respond in opposition to that motion and request that the Court deny Hattenhauer's motion and grant Noble Roman's all just and proper relief for having to incur additional expense to respond to an argument that has already been raised and addressed by this Court.

There is no dispute that Hattenhauer knew that it was to use only Noble Roman's specified ingredients. Dkt. 1-1 at 9-11; Dkt. 1-2 at 9-11; Dkt. 1-3 at 9-10; Dkt. 1-4 at 9-11. With respect to pizza cheese, Noble Roman's Food Preparation and Product Specifications specifically provides that Noble Roman's Pizza Cheese is a custom blend of real Mozzarella cheese, real Muenster cheese and dry oregano. The cheese used by Hattenhauer for making pizza in the Oregon location did not contain the above described blend of ingredients.

***"All items used must be Noble Roman's Inc. approved."***

Dkt. 159-1 at ¶ 13, Ex. A (Food Preparation and Product Specifications) at 47. Therefore, Hattenhauer's decision to use an unapproved pizza cheese in one of its two locations was a violation of the Lanham Act as a matter of law.

The undisputed facts show that as early as 2010 until approximately August 2014, Hattenhauer's Oregon location passed off products that were not made from Noble Roman's proprietary cheese, but instead used a Golden California cheese that did not contain a blend of specified cheese and spice mix which led to a different taste and appearance profile. Dkt. 159-1 at ¶ 18. The fact that Noble Roman's did not discover that Hattenhauer was purchasing Noble Roman's Pizza Cheese for one of its two stores for a period of time does not relieve Hattenhauer of its liability for not using the specified blend of cheese. As soon as Noble Roman's discovered Hattenhauer's wrong doing it took action. In its Motion for Partial Summary Judgment, Noble Roman's seeks an Order from this Court finding Hattenhauer liable as a matter of law, but leaves the amount of damages stemming from Hattenhauer's wrongdoing for trial.

Similarly, there is no shred of evidence that Noble Roman's consented to Hattenhauer's use of a substitute cheese. Hattenhauer points to testimony from its distributor, McDonald Wholesale Distributing ("McDonald"), for its assertion. *See* Dkt. 178, Response at 25.

McDonald testified that when it first started supplying Hattenhauer with ingredients there were certain items that it could not purchase immediately.[2] *See* Dkt. 177-3, 27:7-11. However, McDonald further testified that it could not recall nor had any record of any instance where it substituted any of Noble Roman's proprietary products – such as pizza cheese. *Id.* at 152:12-15. There is no evidence that Noble Roman's ever consented to any substitution of any proprietary product such as pizza cheese.

McDonald also testified that it was authorized to and routinely did sell non-Noble Roman's products to its customers, like Hattenhauer, for other uses besides making Noble Roman's Pizza. *Id.* at 27:21-24. Therefore, Hattenhauer's purchase of Golden California Cheese from McDonald would not have alerted Noble Roman's of Hattenhauer's Lanham Act violation, because Hattenhauer could have been purchasing that cheese for a non-Noble Roman's product use. Similarly, a review of the distributor reports revealed that Hattenhauer was purchasing Noble Roman's proprietary pizza cheese from McDonald even though they were using it in the Washington Location. Hence, reviewing the distributor reports without the close analysis provided during the audit would not have revealed Hattenhauer's Lanham Act violation at its Oregon Location. Hattenhauer's excuses and finger pointing should be ignored and partial summary judgment be entered in favor of Noble Roman's.

## III. Hattenhauer Breached the Franchise Agreements by Using Unapproved and Unauthorized Cheese to Make Pizzas at its Oregon Location.

By failing to use Noble Roman's specified, proprietary cheese blend, Hattenhauer has breached the Franchise Agreements. In defense of this count, Hattenhauer complains that Noble

[2] Hattenhauer speculates that McDonald may have selected and supplied the wrong pizza cheese to Hattenhauer when it became Hattenhauer's distributor. In Hattenhauer's view, it merely continued to use this unapproved cheese without correction from McDonald or Noble Roman's. This lack of responsibility does not relieve Hattenhauer from the consequences of its failure to order and use Noble Roman's proprietary pizza cheese to make Noble Roman's Pizzas.

Roman's breached the Franchise Agreements by failing to provide training and assistance on control and compliance, and, thus, cannot recover from Hattenhauer's breaches of the same agreement. *See* Dkt. 178, Response at 27-29. Hattenhauer's theme of blaming others for its wrong doing again rings hollow. This is an argument that has been refuted on multiple occasions during this litigation.

The Franchise Agreements did not require or obligate Noble Roman's to provide training or inspection of Hattenhauer's locations after the initial training period. Dkt. 1-1, §V(7) ("During the operation of the franchised business, such additional assistance as is reasonably necessary, in the sole discretion of Franchisor, to assist Franchisee in meeting Franchisor's quality control standards."); *see also* Dkt. 1-2, §V(7); Dkt. 1-3, §V(7); Dkt. 1-4, §V(7). Noble Roman's had franchise managers periodically visit Hattenhauer's Locations, but these visits did not create any affirmative duty to oversee Hattenhauer's operations. In Noble Roman's "sole discretion" this was all the assistance that was reasonably necessary.

The fact that these franchise managers did not catch Hattenhauer's use of unapproved and unauthorized pizza cheese does not absolve Hattenhauer from liability. Noble Roman's performed its contractual obligations under the Franchise Agreements, and there is no genuine issue of material fact to the contrary. Therefore, Noble Roman's is entitled to summary judgment as to: (i) the existence of an enforceable contract between the parties, and (ii) Hattenhauer's breach of contract when it undisputedly used unauthorized and unapproved cheese to sell pizza marked as "Noble Roman's Pizza" at its Oregon Location in violation of the Franchise Agreements. The amount of damages inflicted upon Noble Roman's due to Hattenhauer's breach will be determined at trial.

## IV. Noble Roman's Audit Is Authorized by the Franchise Agreements, Which Demonstrated That Hattenhauer Had Under-Reported Its Sales.

Hattenhauer disputes Noble Roman's audits of its reported sales by arguing: (i) the audits were based upon potential or estimated sales, instead of actual sales; and (ii) the IRS guidelines for how to audit a pizza restaurant are not relevant. Noble Roman's conducted an audit of Hattenhauer by reviewing Hattenhauer's purchases, from the distributor's records of the pizza crusts and other key ingredients, made an allowance for reasonable waste of products and calculated the amount of sales that would be generated from those purchases. Noble Roman's based its calculation on its operating standards and specifications, decades of experience in the pizza business and Mr. Mobley's being an experienced auditor as a Certified Public Accountant then compared that calculation to the reported sales. Dkt. 159-1 ¶¶ 14-15.

Noble Roman's audit revealed that Hattenhauer was purchasing more key ingredients than necessary for the sales it reported, which caused Noble Roman's to conclude that Hattenhauer had underreported its sales. *Id.* at ¶ 15. Hattenhauer contends that the Franchise Agreements did not permit this type of audit conducted by Noble Roman's. Hattenhauer is mistaken. The Franchise Agreements require franchisees to maintain their books and complete records—including purchase orders—and the Franchise Agreements provide that Noble Roman's may audit Hattenhauer's records.

Specifically, the Franchise Agreements require Hattenhauer to preserve its "books, records and accounts, including, but not limited to, daily sales records, sales slips, coupons, purchase orders," etc. Compl., Ex. 1 at 16, Ex. 2 at 16, Ex. 3 at 16, Ex. 4 at 17. The Franchise Agreements also provide that Noble Roman's may audit Hattenhauer's "books and records." *Id.* Finally, the Franchise Agreements provide that "if an inspection should reveal that such

payments have been understated in any report to [Noble Roman's], then [Hattenhauer] shall immediately pay to [Noble Roman's] the amount overdue." *Id.*

Combined, these provisions: (1) require Hattenhauer to retain as part of its books and records its purchase orders; (2) provide that Noble Roman's may audit those records; (3) recognize that Noble Roman's may discover an understatement of sales; and (4) create an obligation for the franchisee to "immediately pay" the amount due. Under these provisions, Noble Roman's could use the purchase records to determine whether Hattenhauer had understated its Gross Sales, and therefore, its royalty payments. Hattenhauer's contention that the audit must be of, and only of, the reported Gross Sales misses this point and would make the provision allowing the Franchisor to audit reported sales meaningless; indeed, under Hattenhauer's theory, the contractual requirement that it preserve its "books, records, and accounts," which include purchase orders, would serve no purpose. That is, Hattenhauer would not be required to maintain certain records, including purchase orders, if Noble Roman's could not rely on those records to verify the accuracy of Hattenhauer's reported sales. This interpretation must be avoided. *See Beam v. Wausau Ins. Co.*, 765 N.E.2d 524, 533 (Ind. 2002) (refusing to interpret a contract in a way that would be preposterous or in a way that would render the contract's terms illusory).

Noble Roman's was authorized to conduct this audit under the terms of the Franchise Agreements executed by the parties. Hattenhauer's franchises are non-traditional, in that they are located in convenience stores where pizzas are baked periodically during the day and placed in a Noble Roman's branded warmer for a grab-n-go service style. Dkt. 159-1 at ¶ 9. By the very nature of this system, and location inside a convenience store that sells numerous items, there are lots of opportunities for errors. For example, an employee must actually ring up

everything being purchased from the customer, as opposed to just telling the customer the amount owed and collecting money. Moreover, pizza could be mistakenly rung up as grocery items instead of as a Noble Roman's product purchase. *Id.* For these reasons, Noble Roman's believed it both important and necessary to conduct an audit in 2014 for locations such as Hattenhauer's.

The purchase of ingredients from a third-party distributor is an accepted, and the recommended, procedure for auditing pizza restaurants. Dkt. 159-1 at ¶ 23. The Internal Revenue Service publishes a Retail Industry Audit Technique Guide ("IRS Guide") that specifically addresses how to audit "Pizza Restaurants. *See* Internal Revenue Service, *Retail Industry Audit Technique Guide*, Feb. 2009, at 129.[3] The IRS Guide notes that as "with any retail business or operation that is cash intensive" it may be necessary for the examiner to use an independent method to estimate the pizza restaurant's income. *See* Reply Exhibit 3. "One such method is the unit volume markup method," which may require the examiner "to contact the pizza restaurant suppliers to obtain the original purchase invoices on all identified cases." *Id.* The examiner then uses the quantity of ingredients purchased to estimate the pizza restaurant's income. *Id.*

For instance, the examiner could use the quantity of flour purchased to estimate the number of pizzas sold, but the examiner will need "to know the number of pizzas that can be made from 100 pounds of flour." *Id.* Since Noble Roman's has written the specifications, and

---

[3] When Noble Roman's filed its Motion for Partial Summary Judgment, this IRS Guide was available at: *http://www.irs.gov/pub/irs-mssp/retail_industry_audit_technique-guide.pdf*. According to *https://www.irs.gov/businesses/small-businesses-self-employed/audit-techniques-guides-atgs#R*, "The Retail Industry ATG (Revision 2/2009) is being revised." Importantly, the February 2009 IRS Guide was available to Noble Roman's when it conducted Hattenhauer's audits that are relevant to this case. Since the IRS Guide is no longer available from the IRS.gov website, Noble Roman's attaches a copy of the relevant portions to this Reply as Exhibit 3.

required the franchisee to follow them via the Franchise Agreement, for the making of all products, it knows how many products the company likely sold based on the franchisee purchases. Here, Noble Roman's received and maintained records of Hattenhauer's purchases from its approved distributor. Dkt. 159-1 at ¶ 15. In the audit, Noble Roman's compared those purchases against Hattenhauer's Gross Sales, made an allowance for reasonable waste products, and calculated an amount of sales that Noble Roman's, based on its decades of experience in the pizza business, expected to see based on that analysis. *Id.* This audit was entirely consistent with the Franchise Agreements' provisions.

Consistent with the IRS Guide's recommendations, a royalty audit should include a review of the franchisee's "royalty reports, sales journals, sales invoices, manufacturing records, purchases records, shipping records, inventory records, merchandise credits or returns," etc. Mary M. Squyres and Nanette Norton, 2 *Trademark Practice Throughout the World* § 21:11.50 (2014). The clear implication is that collecting a number of independent records allows the auditor to verify the reported sales. For example, a franchisee's shipping records may reveal that it is shipping far more products than its reported sales would indicate, which implies the franchisee is underreporting its sales. Or, as here, a franchisee's purchase records may reveal that it is purchasing more ingredients (or pizza crusts) than would be needed for the amount of sales it is reporting, which again would indicate the franchisee is underreporting its sales. In short, Noble Roman's audit process is entirely consistent with the Franchise Agreements, the IRS Guide's recommendations, and with industry practice. For these reasons, Noble Roman's respectfully request that the Court enter summary judgment in its favor finding Noble Roman's method of audit to be permitted by the Franchise Agreement, with the amount of damages due from this audit to be determined at trial.

## CONCLUSION

For the foregoing reasons, this Court should grant Noble Roman's Motion for Partial Summary Judgment and dismiss Hattenhauer's counterclaims, and, thereby, significantly narrow the issues in this litigation for a trial on damages owed by Hattenhauer to Noble Roman's, only.

Respectfully submitted,

s/ *Curtis T. Jones*
Curtis T. Jones (#24967-64)

BOSE McKINNEY & EVANS LLP
111 Monument Circle, Suite 2700
Indianapolis, IN 46204
(317) 684-5000; (317) 684-5173 Fax
CJones@boselaw.com

*Attorney for Plaintiff/Counterclaim Defendant, Noble Roman's, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2016, a copy of the foregoing "Reply in Support of Noble Roman's Motion for Partial Summary Judgment" was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Dawn M. Johnson, Esq. -- dmj@greensfelder.com
John E. Petite, Esq. -- jep@greensfelder.com
Jasmine Y. McCormick, Esq. -- jmccormick@greensfelder.com
Greensfelder, Hemker & Gale, P.C.
10 South Broadway, Suite 2000
St. Louis, MO 63102

/s/ *Curtis T. Jones*
Curtis T. Jones

3047814v2/15108.121