UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| NOBLE ROMAN'S, INC., | ) |
| | ) |
|   Plaintiff, | ) |
| | ) |
|     vs. | ) Cause No. 1:14-cv-1734-WTL-DML |
| | ) |
| HATTENHAUER DISTRIBUTING COMPANY, | ) |
| | ) |
|   Defendant. | ) |

### ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This cause is before the Court on the Defendant's motion for summary judgment (Dkt. No. 160). The motion is fully briefed, and the Court, being duly advised, **GRANTS IN PART** the motion for the reasons and to the extent set forth below.

### I. APPLICABLE STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed, and all reasonable inferences must be drawn in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). The non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

## II. RELEVANT FACTS

The facts relevant to the issues decided by the Court herein, viewed in the light most favorable to the Plaintiff, as the non-moving party, are as follow.

Defendant Hattenhauer Distributing Company ("Hattenhauer") owns and operates 21 gas stations and associated convenience stores. Relevant to this case are two of the stores, one located in Goldendale, Washington, and the other in Biggs Junction, Oregon. In April 2005, Hattenhauer signed a five-year agreement with the Plaintiff, Noble Roman's, Inc., ("Noble Roman's") to operate a pizza franchise at its Oregon Location. This agreement was renewed in March 2011. In August 2006, Hattenhauer signed ten-year agreements with Noble Roman's to operate both a pizza franchise and a sub sandwich franchise at its Washington Location.

Pursuant to its agreements with Noble Roman's, Hattenhauer was required to use ingredients approved by Noble Roman's in its franchises. This included Noble Roman's proprietary pizza cheese, which is a blend of mozzarella and Muenster cheese and dry oregano.

In 2010, Noble Roman's changed its approved distributer for Hattenhauer's locations to McDonald Wholesale Company ("McDonald"). Between August 2010 and approximately August 2014, Hattenhauer purchased Golden California brand mozzarella cheese from McDonald rather than Noble Roman's proprietary cheese for its Oregon location, although it continued to purchase Noble Roman's proprietary cheese from McDonald for its Washington location. McDonald sent Noble Roman's monthly reports of the sales it made to Noble Roman's franchisees; the reports indicate that Hattenhauer's Oregon location was purchasing Golden California cheese and was not purchasing Noble Roman's proprietary cheese.

### III. DISCUSSION

Noble Roman's alleges that Hattenhauer's use of unapproved pizza cheese on the pizzas it sold at its Oregon location violated the Lanham Act "because it deceived customers into paying full price for a product Hattenhauer represented was a Noble Roman's pizza, but in fact was not." Dkt. No. 177 at 21. Because "'one of the most valuable and important protections afforded by the Lanham Act is the right to control the quality of the goods manufactured and sold under the holder's trademark,'" Hattenhauer's use of the wrong cheese injured Noble Roman's, it argues, because "[w]hen Hattenhauer used a different cheese, Noble Roman's lost its ability to control the products sold under its trademark." *Id.* at 24 (quoting *Desmond v. Chicago Boxed Beef Distrib.*, 921 F. Supp. 2d 872, 881 (N.D. Ill. 2013)).

Hattenhauer argues that Noble Roman's Lanham Act claim is barred by the doctrine of laches. Noble Roman's failed to respond to that argument in its response to the instant motion, and Hattenhauer argues that failure should be treated as a concession entitling it to a ruling in its favor. That is not consistent with Seventh Circuit precedent, however. Regardless of a non-moving party's failure to respond,

> [a]s the moving party, the defendants still "ha[d] the burden to show that [they were] entitled to judgment under established principles." *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 161, 90 S. Ct. 1598, 26 L.Ed.2d 142 (1970) (internal quotation marks omitted); *accord Keeton v. Morningstar, Inc.,* 667 F.3d 877, 884 (7th Cir.2012). A moving party who fails to discharge this burden is not entitled to summary judgment, even if the nonmovant entirely fails to respond.

*Gerhartz v. Richert*, 779 F.3d 682, 685-86 (7th Cir. 2015). Thus, even though Noble Roman's wholly failed to address Hattenhauer's laches argument, the Court still must "'ascertain that judgment [is] proper as a matter of governing law.'" *Id.* at 686 (quoting *Johnson v. Gudmundsson,* 35 F.3d 1104, 1112 (7th Cir. 1994)). That said, "[i]t is not this court's responsibility to research and construct the parties' arguments," *Draper v. Martin*, 664 F.3d

3

1110, 1114 (7th Cir. 2011), and "[i]t is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered.  If it does not do so, and loses the motion, it cannot raise such reasons on appeal." *Domka v. Portage Cty., Wis.*, 523 F.3d 776, 783 (7th Cir. 2008) (citations omitted); *see also D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 800 (7th Cir. 2015).

With these rules in mind, the Court turns to the merits of Hattenhauer's laches argument.

> The doctrine of laches is derived from the maxim that those who sleep on their rights, lose them.  For laches to apply in a trademark infringement case, the defendant must show that the plaintiff had knowledge of the defendant's use of an allegedly infringing mark, that the plaintiff inexcusably delayed in taking action with respect to the defendant's use, and that the defendant would be prejudiced by allowing the plaintiff to assert its rights at this time.

*Chattanoga Mfg., Inc. v. Nike, Inc.*, 301 F.3d 789, 792-93 (7th Cir. 2002) (citations omitted). When there are no disputed issues of material fact relevant to the laches inquiry, it is appropriate for the issue to be decided on summary judgment.  *See id.*; *see also Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 820 (7th Cir. 1999).

Turning to the first part of the laches analysis, Noble Roman's must have had actual or constructive knowledge of Hattenhauer's use of non-approved pizza cheese.  With regard to constructive knowledge, "a trademark owner is 'chargeable with information it might have received had due inquiry been made.'"  *Id.* (quoting *Safeway Stores, Inc. v. Safeway Quality Foods, Inc.*, 433 F.2d 99, 103-04 (7th Cir. 1970)).  In this case, the undisputed facts demonstrate that Noble Roman's had the requisite constructive knowledge.  Noble Roman's received monthly reports from McDonald that showed that, beginning at least as early as August 2010, Hattenhauer's Oregon location was not purchasing any approved cheese and was instead purchasing non-approved cheese.  Noble Roman's does not dispute that fact, nor does it dispute

4

that the information in those reports was sufficient to put it on notice that Hattenhauer was using the wrong cheese at its Noble Roman's pizza franchise in Oregon.

The next question is whether Noble Roman's inexcusably delayed taking action with regard to Hattenhauer's use of the wrong cheese. In determining whether a plaintiff's delay was inexcusable, a court must determine what the statute of limitations is for the most closely analogous state law claim. There is a presumption that laches bars a trademark infringement suit that is not brought within that statute of limitations. *Hot Wax, Inc.*, 191 F.3d at 820; *see also Chattanoga Mfg., Inc.*, 301 F.3d at 793-94.

Hattenhauer, citing *Boss Prod., Inc. v. Port-A-Pit Bar-B-Que of Edgerton, Inc.*, No. 3:05-CV-293 RM, 2009 WL 260793, at *8 (N.D. Ind. Feb. 4, 2009), argues that the most analogous state law claim is a claim under the Indiana Deceptive Consumer Sales Act. The Court disagrees. "To ascertain the applicable statute of limitations, we first identify the substance of the cause of action by inquiring into the nature of the alleged harm." *Whitehouse v. Quinn*, 477 N.E.2d 270, 274 (Ind. 1985). Claims under the Indiana Deceptive Consumer Sales Act redress harm "actually suffered as a consumer as a result of the deceptive act" and must be brought by the injured consumer (or the attorney general on behalf of injured consumers). Ind. Code § 24-5-0.5-4. In this case, the harm Noble Roman's seeks to redress is not the harm to consumers who ate the non-conforming pizza sold by Hattenhauer, but rather the harm that Noble Roman's suffered because people ate the non-conforming pizza and believed it to be authentic Noble Roman's pizza, thus harming Noble Roman's brand. This type of trademark infringement claim is most analogous to a claim for injury to personal property. *See Nartron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397, 408 (6th Cir. 2002) ("In evaluating whether a party has been diligent in protecting its trademark, we look to the state-law statute of limitations for injury

to personal property."); *cf. In re A & F Enterprises, Inc. II*, 742 F.3d 763, 769 (7th Cir. 2014) (noting that trademark violations cause irreparable injury "primarily because injuries to reputation and goodwill are nearly impossible to measure").

In Indiana, the statute of limitations for claims for injuries to personal property is two years. Ind. Code § 34-11-2-4. Noble Roman's had constructive knowledge of Hattenhauer's infringement when it began receiving the reports that indicated that Hattenhauer was purchasing non-conforming cheese and was not purchasing conforming cheese. Those reports were sent on at least a monthly basis, Dkt. No. 162-14 at 7; therefore, no later than sometime in September 2010, Noble Roman's received its first report indicating that Hattenhauer was using non-conforming cheese. It continued to receive such reports each month. It was four years later—September 25, 2014—when Noble Roman's notified Hattenhauer of the problem; this suit was filed shortly thereafter. The Court finds this delay of twice the analogous statute of limitations to be unreasonable.

Finally, in order for laches to apply, Hattenhauer must have been prejudiced by the unreasonable delay. "A delay prejudices a defendant when the assertion of a claim available for some time would be inequitable in light of the delay in bringing that claim and ensues when a defendant has changed his position in a way that would not have occurred if the plaintiff had not delayed." *Chattanoga Mfg., Inc.,* 301 F.3d at 795. In this case, the undisputed facts indicate that Hattenhauer was not using non-conforming cheese intentionally.[1] There is also no evidence that

---

[1] Hattenhauer has submitted a declaration that states that it did not request the non-conforming cheese from McDonald; rather, McDonald—the distributor chosen by Noble Roman's—sold it to Hattenhauer instead of the approved cheese. Noble Roman's asserts that Hattenhauer "chose not to order and use Noble Roman's pizza cheese, but instead ordered" the non-approved cheese. The evidence cited by Noble Roman's for that fact does not support it, however; it shows that the cheese Hattenhauer purchased was not the Noble Roman's approved

6

Hattenhauer benefitted economically from using the wrong cheese; indeed, it was sometimes more expensive than the approved cheese. As soon as Noble Roman's notified Hattenhauer of the problem, it corrected it. Thus, the fact that Noble Roman's delayed taking action to protect its trademarks led to Hattenhauer's continued infringement. If Noble Roman's were allowed to recover for trademark infringement now, Hattenhauer would be prejudiced by having to disgorge its profits for years of infringing sales that would not have been made had Noble Roman's acted promptly on the information that was readily available to it.

Laches is an equitable defense, and given the undisputed facts in this case, the Court finds that the equities weigh in favor of applying it to bar Noble Roman's trademark infringement claim in this case. Accordingly, summary judgment is **GRANTED** in favor of Hattenhauer on Noble Roman's claim under the Lanham Act.

The Lanham Act claim is the only federal claim in this case. The parties also have moved for summary judgment on Noble Roman's remaining claim and Hattenhauer's counterclaims, all of which are premised on state law. The Court's jurisdiction over Noble Roman's state law claim is based on 28 U.S.C. § 1367, which provides for the exercise of supplemental jurisdiction over claims based on state law that are closely related to the federal claims in a case. Dkt. No. 1 at ¶ 7. Jurisdiction over Hattenhauer's counterclaims is premised on the fact that they are compulsory counterclaims. Dkt. No. 49 at ¶ 3. "When all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims." *RWJ Mgmt. Co. v. BP Products N. Am., Inc.*, 672 F.3d 476, 479 (7th Cir. 2012) (citation omitted). "The presumption is rebuttable,

---

cheese, which is undisputed, but it does not show that Hattenhauer "chose to order" the wrong cheese.

but it should not be lightly abandoned, as it is based on a legitimate and substantial concern with minimizing federal intrusion into areas of purely state law." *Id.* (citations and internal quotation marks omitted). The Seventh Circuit has

> identified certain circumstances that may displace the presumption, namely: (1) the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided.

*Id.* at 480 (citation omitted). None of those exceptions apply here. Accordingly, the Court declines to exercise supplemental jurisdiction over the state law claims asserted in the Complaint and the Counterclaim.

## IV. CONCLUSION

For the reasons set forth above, the Defendant's motion for summary judgment (Dkt. No. 160) is **GRANTED IN PART** and summary judgment is entered in favor of the Defendant on the Plaintiff's claim under the Lanham Act. All remaining claims and counterclaims in this case are **DISMISSED WITHOUT PREJUDICE**.

SO ORDERED: 2/27/17

_William T. Lawrence_
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification